UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

SCOTT MCCRAY,

      Plaintiff,

v.                                     Case No. 18-cv-01637

ROBERT WILKIE,
Secretary of the Department of Veterans Affairs,

      Defendant.

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

Current Department of Veterans Affairs ("Agency") employee Scott McCray ("Plaintiff") alleges that he was subjected to retaliation and discrimination on the basis of sex, race, and disability. (*See generally* ECF No. 1.) Although Plaintiff does not specify which of his allegations relate to which of the legal theories he generally invokes at the outset of his complaint, (*id.*, ¶ 1), it appears that Plaintiff takes issue with the following seven alleged occurrences:

> **Claim #1**: Plaintiff's supervisor, Dr. Erin Williams, required Plaintiff to undergo a peer review following the death of a veteran on Plaintiff's caseload. (ECF 1, ¶¶ 24-31.)
>
> **Claim #2**: Plaintiff was not promoted to a GS-12 level position. (*Id.*, ¶¶ 32-47.)
>
> **Claim #3**: After requesting a new replacement van to transport veterans to and from their homes and medical appointments on July 12, 2012, Plaintiff did not receive a "safe replacement van" until June 19, 2013. (*Id.* ¶¶ 48-61.)
>
> **Claim #4**: Plaintiff's supervisor "yelled" at him on September 16, 2013. (*Id.* ¶¶ 62-74, 78.)
>
> **Claim #5**: Plaintiff received an "excellent" rather than an "outstanding" performance rating. (*Id.* ¶¶ 75-78.)
>
> **Claim #6**: The Agency denied Plaintiff's request to move offices. (*Id.* ¶¶ 79-85.)

**Claim #7**: The Mental Health Chief of Staff Dr. Lehman asked Plaintiff's coworkers questions such as "Have you noticed Scott being threatening?" (*Id.* ¶ 86.)

Whether viewed individually or collectively, none of these allegations states a viable claim of discrimination or retaliation under Title VII[1] or the Rehabilitation Act.[2] Claims #1 and #2 should be dismissed because Plaintiff has failed to exhaust his administrative remedies with respect to these claims. Claims #3-7 are not supported by factual allegations sufficient to give rise to plausible claims of discrimination or retaliation under the Rehabilitation Act or Title VII. Accordingly, the Court should grant this motion and dismiss Plaintiff's complaint.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Procedure challenges the legal sufficiency of a complaint. When evaluating a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Rule 12(b)(6) motions are generally confined to the allegations in the complaint. However, in considering a Rule 12(b)(6) motion the Court may take judicial notice of administrative proceedings without converting the motion into a motion for summary judgment. *Davis v. Potter,* 301 F. Supp. 2d 850, 856 (N.D. Ill. 2004)(noting that in assessing a motion to dismiss "courts may take judicial notice of the record of an administrative proceeding"); *Bell v. United States,* No. 13-cv-1271, 2014 WL 555311, at *2 (E.D. Wis. Feb. 12, 2014)(" I may take judicial notice of the fact

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a.
[2] The Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794, 794a.

2

that a plaintiff has failed to exhaust his administrative remedies."). Accordingly, a plaintiff's failure to exhaust administrative remedies is grounds for dismissal pursuant to Rule 12(b)(6). *See, e.g., Bell,* 2014 WL 555311 at *2 (citing cases).

## ARGUMENT

I. **Claim #1 Should Be Dismissed Because: (1) Plaintiff Never Filed A Formal Discrimination Complaint With The Agency Regarding That Claim And (2) Plaintiff Released That Claim.**

A federal employee seeking to initiate a lawsuit claiming discrimination or retaliation under Title VII or the Rehabilitation Act must first exhaust administrative remedies with the EEO department of his agency. *See*, e.g., *Duhart v. United States Postal Service,* No. 17-CV-192, 2017 WL 2483803, at *2 (E.D. Wis. June 8, 2017)(noting that "[f]ailure to exhaust . . . administrative remedies precludes the employee's right to relief."); *Tyler v. Runyon,* 70 F.3d 458, 467 (7th Cir. 1995)("[T]he remedies, procedures, and rights available under the Rehabilitation Act are the same that are afforded under Title VII[.]"). The employee may initiate informal pre-complaint processing by consulting with an EEO counselor within his agency within 45 days after the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). This preliminary step "allow[s] the government and the employee involved an opportunity to informally resolve the matter before formal action is taken, either through the EEOC or in the courts." *Pagels v United States Postal Service,* Case No. 15-cv-1010-pp, 2016 WL 3034244, at *2 (E.D. Wis. May 27, 2016).

If informal counseling does not result in a resolution, the agency must provide the employee with notice of the right to file a formal discrimination complaint. 29 C.F.R. § 1614.105(d); *see also* 29 C.F.R. §§ 1614.106-1614.108. Upon receipt of the notice, the employee has 15 calendar days to file a formal discrimination complaint with the agency. 29 C.F.R. § 1614.106(b); *Ester v. Principi,* 250 F.3d 1068, 1071 (7th Cir. 2001)("One administrative remedy

3

federal employees must pursue is the filing of a formal complaint of discrimination within 15 days of receiving notice of the right to do so."). Only after the employee has exhausted all administrative remedies may the employee pursue legal action in federal court, within certain defined time periods. *See* 29 C.F.R. § 1614.407; *Reynolds v. Tangherlini,* 737 F.3d 1093, 1099 (7th Cir. 2013); *Townsend v. Lentz,* No. 01-C-0573-C, 2002 WL 32349396, at *2 (W.D. Wis. June 7, 2002)("Because plaintiff failed to exhaust his administrative remedies before filing suit in this court, I will grant defendants' motion to dismiss.").

Plaintiff never filed a formal discrimination complaint regarding Claim # 1 above (*i.e.,* that Plaintiff was subjected to peer review.) (*See* Declaration of Erin Kaiser ("Kaiser Decl."), ¶ 2.) Rather, after consulting with an EEO counselor during the pre-complaint processing stage, Plaintiff and the Agency entered into a settlement agreement with respect to that claim. (*Id.* ¶¶ 2-3 & Exhibit ("Ex.") 1, 2.) Thus, Plaintiff has failed to exhaust his administrative remedies with respect to Claim #1. *Pagels,* 2016 WL 3034244 at *2.

Claim #1 also fails because Plaintiff released it in the January 23, 2012 settlement agreement.[3] (Kaiser Decl., ¶ 3 & Ex. 2.) 29 C.F.R. § 1614.504(a)("Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties."); *Martin Vargas v. Pritzker,* Case No. 15-cv-4633, 2015 WL

---

[3] The Settlement Agreement provides in relevant part:

> (1) Complainant and the Agency do hereby settle all claims, issues, complaints, or actions arising out of the EEOC complaint filed by Complainant, Agency Case No. 200J-0695-2012100096, alleging that Complainant was discriminated against based on Race (Black) and Sex (Male), and any and all other claims, appeals, complaints, or actions arising from acts allegedly taken against Complainant by the Agency, or any of its employees, including but not limited to past and present officials and employees of the U.S. Department of Veterans Affairs, in either their official or individual capacity, prior to and including the date that this Settlement Agreement is executed by all parties ("Effective Date").

4

7888966, at *3 (N.D. Ill. Dec. 3, 2015)("When a Title VII plaintiff executes a general release in clear and unambiguous language in favor of a given party, the release serves as a bar to a subsequent Title VII claim brought in federal court against that party.")(Internal quotation omitted). Plaintiff does not acknowledge (much less challenge the enforceability of) the settlement agreement in his complaint. *See id.* (granting motion to dismiss where discrimination claim was covered under a settlement agreement, noting that "[p]laintiff has not made any allegation that the release was not knowing and voluntary"); *see also Sherman v. Standard Rate Data Serv., Inc.,* 709 F. Supp. 1433, 1438 (N.D. Ill. 1989)("If the plaintiff fails to allege that the defendant misrepresented the terms of release or that [plaintiff] was unaware of the terms of the same, then the Court must conclude that the plaintiff's assent to the release was voluntary and knowing"). Therefore, the Court should grant this motion and dismiss Claim #1 for failure to exhaust administrative remedies.

## II. Claim #2 Should Be Dismissed Because: (1) Plaintiff Abandoned That Claim And (2) Plaintiff Has Not Complied With 29 C.F.R. § 1614.407(d).

On or about November 21, 2013, Plaintiff filed a discrimination complaint with the Agency in which he alleged, among other things, that the Agency did not promote him to a GS-12 position (Claim #2.) (Kaiser Decl., ¶ 4-5 & Ex. 3, at pp. 1.) The Agency subsequently issued a final agency decision finding no discrimination, which Plaintiff appealed to the EEOC. (*Id.,* p. 2.) In a decision dated February 21, 2018, the EEOC vacated the portion of the Agency's decision pertaining to Plaintiff's claim that he was not promoted to a GS-12 position and remanded the matter to the Agency for consideration as a claim that the Agency had breached the January 23, 2012 settlement agreement. (*Id.* at pp. 2-3, 5.) On September 4, 2018, the Agency issued a final decision finding that there had been no breach of the January 23, 2012 settlement agreement. (Kaiser Decl., ¶ 6 & Ex. 4.) On October 9, 2018, Plaintiff appealed the Agency's September 4, 2018 decision to the

5

EEOC.  (*Id.* ¶ 7 & Ex. 5.)   Only six days later, on October 15, 2018, Plaintiff initiated the instant lawsuit.  (ECF No. 1.) The EEOC has not yet issued a decision regarding Plaintiff's appeal.  (Kaiser Decl. ¶ 7.)

Plaintiff has abandoned any claim that the Agency's failure to promote him to a GS-12 position was the result of discrimination or retaliation.  In its February 21, 2018 decision, the EEOC concluded that Plaintiff was actually alleging a breach of settlement agreement claim. (Kaiser Decl., ¶ 5 & Ex. 3 at pp. 2-3, 5.)  *See also* 29 C.F.R. § 1614.504 (describing procedures applicable to breach of settlement agreement claims.)  Plaintiff did not challenge the EEOC's construction of that claim as a breach of settlement agreement claim, and the Agency's September 4, 2018 decision on remand (and, consequently, Plaintiff's appeal of that decision to the EEOC) concern only a breach of settlement agreement claim.  (*See id.* ¶ 6 & Ex. 4.)  Having abandoned his discriminatory or retaliatory failure to promote claim during administrative proceedings, Plaintiff cannot revive it here. *See, e.g., In Laughter v. Gallup Indian Med. Ctr*., 425 Fed. App'x. 683, 686 (10th Cir.2011)("Abandoning a complaint of discrimination filed with an employing agency prior to the agency's final action on the complaint constitutes a failure to exhaust."); *Smeltzer v. Potter*, No. 10–cv–00178, 2010 WL 4818542, at *3 (W.D.N.C. Nov. 22, 2010) ("When a plaintiff waives or abandons a claim at the administrative level, the plaintiff effectively fails to exhaust the claims to permit district court review."); *Stephens–Buie v. Shinseki*, No. 09–cv–2397, 2011 WL 2574396, at *8 (S.D.N.Y. June 27, 2011) ("When a plaintiff voluntarily withdraws a timely filed claim during the EEO process, by withdrawing his claim he effectively fail[s] to exhaust his remedies.") (Internal quotation omitted).

Even if Plaintiff had not abandoned any discrimination or retaliation claim based on the allegations comprising Claim #2, Plaintiff's initiation of this lawsuit only six days after filing an

6

appeal with the EEOC is premature. The applicable regulations authorize a lawsuit only "[a]fter 180 days from the date of filing an appeal with the [EEOC] if there has been no final decision by the [EEOC]." 29 C.F.R. § 1614.407(d). Just as filing a lawsuit too late is grounds for dismissing a claim, "jumping the gun by filing too early" as Plaintiff did here is grounds for dismissal as well. *Jennings v. Panetta,* 492 Fed. App'x 698, 699 (7th Cir. 2012)("Once [plaintiff] appealed to the EEOC, she was barred from filing a civil suit in federal court until either the EEOC issued a final decision or 180 days had passed."); *Foster v. Brennan,* No. 1:17-cv-04271-JMS-DLP, 2018 WL 3439075, at *5 (N.D. Ind. July 17, 2018)(dismissing complaint where the plaintiff did not comply with 29 C.F.R. §1614.407(b), reasoning that "[b]ecause the decision was not final as of the time [plaintiff] filed her Complaint, and because the required 180 days had not expired, [plaintiff] failed to exhaust her administrative remedies[.]").

### III.   Plaintiff's Remaining Allegations Do Not State Viable Claims for Relief.

Generously construed in Plaintiff's favor, it appears that Plaintiff intends to allege disparate treatment-type claims in Claims # 4, 5, and 7 and failure to accommodate claims with Claims # 3 and 6.[4] Regardless of the precise theory Plaintiff is pursuing, his allegations regarding his remaining claims do not support a reasonable inference that Plaintiff was subjected to discrimination or retaliation within the meaning of Title VII or the Rehabilitation Act.

---

[4] As noted above, Plaintiff generally alleges that the instant lawsuit pertains to discrimination "in the terms, conditions, and privileges of employment", for failure to accommodate, and for retaliation under Title VII and the Rehabilitation Act, but he does not specifically allege which type of alleged discrimination relates to which of his allegations. (*See* ECF No. 1, ¶ 1.) This lack of specificity is grounds for dismissal of Plaintiff's complaint. *See Richter v. Evans,* No. 1:14-cv-261-TLS, 2014 WL 4700852, *3 (N.D. Ind. Sept. 22, 2014)(dismissing case where plaintiff did not specify the type of claim she was alleging, reasoning that "[t]he Defendant is entitled to know, even at this stage of the litigation, whether the Plaintiff is claiming she was suspended from work simply because her son filed a complaint, because she participated in the investigation of his complaint, or both.").

### A. Claims #4, 5, And 6 Are Not Viable Disparate Treatment Or Retaliation Claims.

Plaintiff apparently alleges that he was subjected to retaliation or disparate treatment on the basis of race, sex, or disability (Plaintiff does not specify which) when he was "yelled" at by his supervisor, given an "excellent" rather than an "outstanding" rating, and when the Mental Health Chief of Staff asked his co-workers questions about him. However, none of Plaintiff's factual allegations support a reasonable inference that any of these actions constituted actionable adverse employment actions, as required to support a claim of disparate treatment or retaliation under Title VII or the Rehabilitation Act. *See, e.g., Israel v. Crime Victims Services Division,* No. 05 C 7072, 2006 WL 3341199, at *4 (N.D. Ill. Nov. 20, 2006)("To establish a prima facie case under Title VII . . . or the Rehabilitation Act, one must allege that he experienced some adverse employment action."): *Monroe v. Columbia College of Chicago,* No. 17-cv-5938, 2018 WL 4074190, at *3-4 (N.D. Ill. Aug. 27, 2018)(granting motion to dismiss Title VII discrimination claim where plaintiff's allegations did not support an inference that he experienced an actionable adverse employment action).

"[N]ot everything that makes an employee unhappy is an actionable adverse action" sufficient to give rise to an actionable disparate treatment claim under Title VII or the Rehabilitation Act. *Smart v. Ball Univ.,* 89 F.3d 437, 441 (7th Cir. 1996). "Otherwise, minor and even trivial employment actions that an irritable, chip-on-the shoulder employee did not like would form the basis of a discrimination suit." *Id.* (Internal quotation omitted). Thus, in order to give rise to a viable disparate treatment claim, the allegedly discriminatory action must result in a significant change in the terms and conditions of employment, such as: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career

8

prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.,* 662 F.3d 448, 454-455 (7th Cir. 2011).

Although the standard for adverse employment actions sufficient to support a retaliation claim is broader than the standard applicable to disparate treatment claims, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe. Ry. Co. v. White,* 548 U.S. 53, 68 (2006)(internal quotation omitted). Even under this somewhat more lenient standard, "petty slights or minor annoyances, mere verbal warnings, and unfair reprimands . . . unaccompanied by some tangible job consequence cannot be adverse actions." *Jackson v. Filtran, LLC,* Case No. 15-cv-3468, 2016 WL 3568812, at *3 (N.D. Ill. June 30, 2016)(internal quotation omitted)(granting motion to dismiss retaliation claim for failure to state a claim for which relief can be granted, where plaintiff alleged "retaliation in the form of harassment and a verbal disciplinary warning").

### i. Plaintiff's Allegation That His Supervisor Yelled At Him On September 6, 2013 Does Not Give Rise To An Actionable Disparate Treatment or Retaliation Claim.

In Claim #4 above, Plaintiff alleges that on September 6, 2013, he was on a phone call with his supervisor, Dr. Erin Williams and another Agency employee, Doug Kiger. (ECF No. 1, ¶¶ 63-68.) During that call, Mr. Kiger allegedly "yelled at" Plaintiff, "Why are you so defensive?" (*Id.*, ¶ 69.) In response to this statement, Dr. Williams allegedly stated to Plaintiff, "Yes, Doug is right. You are so defensive and loud. Nobody can ever get a word in with you. He is right. I don't know what to do." (ECF No. 1, ¶ 70.) According to Plaintiff, Dr. Williams's alleged statement was in reference to the fact that Plaintiff "has a particularly sonorous voice; it is deep and full[.]"

9

(*Id.* ¶ 74.) Dr. Williams's alleged statement was not accompanied by any discipline. (ECF No. 1, ¶ 78.)

At most, these allegations support an inference that Plaintiff experienced an isolated, unremarkable verbal reprimand. It is well-settled that a mere verbal reprimand cannot constitute an adverse action for purposes of a discrimination or retaliation claim. *See, e.g., Vance v. Ball State Univ,* 646 F.3d 461, 475 (7th Cir. 2011)("Vance argues that Ball State retaliated against her by issuing her a verbal warning . . . . Although we give the concept of an adverse employment action a generous construction, it is not this broad.").

In addition, Plaintiff alleges in his complaint that Dr. Williams's alleged statement was made in reference to his "sonorous" voice, not any protected characteristic or activity under Title VII or the Rehabilitation Act. *See Chapman v. Yellow CAB Cooperative,* No. 15-cv-533-JPS, 2016 WL 6956624, at *7 (E.D. Wis. Nov. 18, 2016)("Chapman offers no facts in his Amended Complaint which, if believed, would support a Title VII racial discrimination claim . . . . He does not allege that he was fired in 2013 because of his race, and his allegations that he was fired because of his wage complaint appear to foreclose that theory."); *see also, e.g., Avila v. Illinois Dep't of Human Services,* Case No. 15-cv-9061, 2016 WL 3595739, at *3 (N.D. Ill. July 5, 2016)(noting that "the Seventh Circuit recognizes that a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims.")(internal quotation omitted). Therefore, Claim #4 should be dismissed.

### ii. Plaintiff's Allegation That He Was Given An "Excellent" Performance Rating Does Not Give Rise To A Viable Discrimination Or Retaliation Claim.

Plaintiff's allegation that he was given an "excellent" rather than an "outstanding" rating (Claim #5) does not give rise to a viable discrimination or retaliation claim because Plaintiff does not allege that he suffered any demotion, loss in pay, suspension, or other tangible job consequence

10

as a result of being rated "excellent."  *Longstreet v. Illinois Dept. of Corrections,* 276 F.3d 379, 384 (7th Cir. 2002)(events that "did not result in tangible job consequences" were not "adverse employment actions actionable under Title VII.").

Plaintiff's allegations also negate any inference that the "excellent" rating was the result of discriminatory or retaliatory animus.  Plaintiff alleges that he was rated "excellent" rather than "outstanding" "based on two incidents: the incident with Kiger [Claim #3 above] . . . and an incident where a white female claimed that he was being disruptive by being loud in the hallway." (ECF No. 1, ¶ 77.)  As noted above, Plaintiff alleges that the alleged "incident with Kiger" was related to Plaintiff's loud and "sonorous" voice, not his race, sex, disability, or protected activity. (ECF No. 1, ¶ 74.)  And the mere fact that Plaintiff alleges that an unnamed "white female" complained that Plaintiff was being "disruptive and loud in the hallway" does not, without more, support a reasonable inference that the complaint was in any way the result of discrimination based on sex, race, or any other protected characteristic or activity.  Accordingly, Claim #5 should be dismissed.

   **iii.**  **Plaintiff's Allegation That The Mental Health Chief Of Staff Asked Plaintiff's Coworkers Questions About Plaintiff Does Not Give Rise To An Actionable Disparate Treatment Or Retaliation Claim.**

Finally, although unclear, Plaintiff appears to complain that he was somehow subjected to disparate treatment or retaliation when, "while he was out on leave, Metal Health Chief of Staff Dr. Lehrmann interviewed McCray's co-workers and asked questions such as, "Have you noticed Scott being explosive lately?" "Has Scott been threatening?", which Plaintiff alleges "would imply that management thought that there was something wrong with McCray, rather than there was something wrong with McCray's supervisor, Dr. Erin Williams." (Claim #7.)  (ECF No. 1, ¶ 86.) This allegation is speculative in the extreme, and provides no facts from which it could be reasonably inferred that Dr. Lehrmann's questioning of Plaintiff's co-workers was in any way

motivated by discriminatory or retaliatory animus. Likewise, Plaintiff does not allege any facts from which it could be reasonably inferred that he suffered any tangible employment action as a result of Dr. Lehrmann's alleged questioning of Plaintiff's co-workers. As a result, Claim #7 fails to state a viable disparate treatment or retaliation claim.

### B. Plaintiff Does Not Allege Viable Failure To Accommodate Claims.

Under the Rehabilitation Act, a failure to accommodate claim includes the following elements: "(1) the plaintiff must be a qualified individual with a disability; (2) the employer must be aware of the plaintiff's disability; and (3) the employer must have failed to reasonably accommodate the disability." *Brumfield v. City of Chicago,* 735 F.3d 619, 631 (7th Cir. 2013). Plaintiff's allegations in his apparent attempted failure to accommodate claims (Claims #3 and #6) do not include sufficient factual allegations to establish that each of these elements is present.

In Claim #3, Plaintiff alleges that on July 12, 2012, he "verbally requested a reasonable accommodation from [Dr.] Williams related to the van he was required to drive because the van was hurting his left knee which had service-connected disability rating." (ECF No. 1, ¶ 50.) In response to his request, Plaintiff was referred to the ergonomics department, which conducted an assessment, and then provided with a replacement van on December 12, 2012. (*Id.* ¶¶ 51-57.) According to Plaintiff, the replacement van was "worse" than the original van, so he complained and was provided with a new van on June 19, 2013." (*Id.* at ¶¶ 57-60.) Plaintiff does not allege any facts to support a reasonable inference that the Agency acted in bad faith during the period after receiving his request for an accommodation; to the contrary, Plaintiff's allegations establish that he was promptly referred to the ergonomics department, an assessment was conducted, and he was provided with two separate vehicles in a less than year-long period. *See, e.g., Morris v. Ford Motor Company,* No. 15-cv-302-wmc, 2016 WL 4991772, at *6-7 (W.D. Wis. Sept. 16,

2016)(noting that a delay in providing an accommodation of even "a year or more" does not constitute a failure to accommodate absent a lack of good faith by the employer). In short, Plaintiff's own allegations establish that Plaintiff received the accommodation he requested, which does not amount to an actionable failure to accommodate.

Claim #6 likewise fails to state a viable claim for relief. Plaintiff claims that he requested reassignment "as a reasonable accommodation for his disabilities, as he was finding it too difficult to work in an environment where he was subjected to discrimination and retaliation for filing complaints about the discrimination. (ECF No. 1, ¶ 79.) According to Plaintiff, he subsequently told his supervisor "that he probably could manage without a reassignment, but he wanted his office moved as a reasonable accommodation for his disabilities." (*Id.* ¶ 83.)

Plaintiff's conclusory allegation that "he was finding it too difficult to work in an environment where he was subjected to discrimination and retaliation for filing complaints about the discrimination" does not support a plausible inference that he required a reassignment or office move requests in order to perform the essential functions of his position. *See* 29 C.F.R. 1630.2(o)(1)(ii)(iii)[5](defining a reasonable accommodation as "modifications or adjustments. . . . that enable an individual with a disability who is qualified to perform the essential functions of that position" or that enable an employee with a disability "to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."). Plaintiff's bare allegation that he requested a reassignment or an office relocation "as a reasonable accommodation for his disabilities" (ECF No. 1, ¶ 79, 83) is a legal conclusion that is not entitled

---

[5] *See* 29 U.S.C. § 794(d)("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 . . . as such sections relate to employment.").

to a presumption of truth in evaluating the legal sufficiency of the complaint. *See, e.g. Spangler v. City of Beaver Dam,* No. 13-CV-833, 2014 WL 468020, at *1 (E.D. Wis. Feb. 6, 2014)(citing *Iqbal,* 552 U.S. at 678.) The mere fact that Plaintiff alleges that he was disabled does not transform each of his workplace requests into a request for a "reasonable accommodation" as defined under the law. *See, e.g, Czubak v. USS Div. of USX,* No. 2:01-CV-622-PS, 2004 WL 2710950, at *4 (N.D. Ind. Sept. 27, 2004)(noting that federal antidiscrimination law "is not intended to give employees with a disability the right to sue their employer because they are unhappy or dislike their changed responsibilities.").

## **CONCLUSION**

For the foregoing reasons, the Court should grant this motion and dismiss Plaintiff's complaint.

Dated at Milwaukee, Wisconsin this 26th day of February, 2019.

        Respectfully submitted,

        MATTHEW D. KRUEGER
        United States Attorney

By:    s/Emily A. Constantine_____
        Emily A. Constantine
        Assistant United States Attorney
        Wisconsin Bar No. 1087257
        Attorneys for United States of America
        Office of the United States Attorney
        Federal Building, Room 530
        517 East Wisconsin Avenue
        Milwaukee, WI 53202
        Telephone: (414) 297-1700
        Fax: (414) 297-4394
        Emily.Constantine@usdoj.gov