UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCOTT MCCRAY,

        Plaintiff,

v.

                              Case No. 18-cv-1637-bhl

DENIS MCDONOUGH,

        Defendant.

---

### DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

        This case highlights the higher burden a plaintiff faces in surviving a motion for summary judgment as opposed to a motion to dismiss. On October 15, 2018, Plaintiff Scott McCray, an employee of the Department of Veterans Affairs, filed an employment discrimination complaint under the Rehabilitation Act against Robert Wilkie, then the United States Secretary of Veterans Affairs. ECF No. 1. McCray's complaint was difficult to follow but appeared to raise issues relating to (1) the VA's failure to comply with his request for a replacement work vehicle; and (2) the VA's refusal to transfer him to a new job position and/or a new workstation. The Magistrate Judge to whom the case was then assigned dismissed the complaint in its entirety for failure to state a claim. ECF No. 27. That decision was reversed in part on appeal, with the Seventh Circuit concluding that McCray had sufficiently alleged a claim based on the VA's delay in providing him with the requested replacement vehicle. *McCray v. Wilkie*, 966 F.3d 616, 620–22 (7th Cir. 2020). With respect to McCray's allegations about the VA's refusal to transfer him, the Court of Appeals explained it could not tell from his allegations whether he was claiming failure to accommodate, retaliation, or hostile work environment, but directed that he be allowed to clarify on remand. *Id.* at 622–23. The dismissal of McCray's other claims was affirmed. *Id.* at 623.

        After remand, McCray amended his complaint to assert seven different counts. ECF No. 49. Count I of the Amended Complaint continues McCray's failure-to-accommodate claim based on the VA's delay in providing him with a replacement vehicle. *Id.* at 8–12. The remaining six counts all relate to his failure-to-transfer allegations. *Id.* at 12–18. Unfortunately, rather than clarifying these claims, as the Seventh Circuit suggested, McCray chose to cover all his bases,

asserting claims for failure to accommodate, retaliation, and hostile work environment based on both the VA's alleged failures to transfer him to a new position and to a new office location. *See id.*

Following these pleading amendments, the parties conducted discovery and, on July 23, 2021, the Defendant moved for summary judgment. ECF No. 57. McCray responded with an Opposition that relies on a series of conclusory assertions, but without developing specific factual evidence to support his contentions. Because the parties are no longer at the pleading stage, this effort falls short. With McCray having failed to come forward with evidence sufficient to create a genuine issue of material fact, his claims fail, and the Defendant's motion for summary judgment will be granted.

## FACTUAL BACKGROUND

Scott McCray is a Milwaukee resident and United States Army veteran who started a second stint working at the United States Department of Veterans Affairs[1] in 2004. ECF No. 49 at 2, 3–5; ECF No. 71-2 at 1. He has held positions at the VA as a Social Science Program Specialist and Mental Health Case Manager. ECF No. 71-2 at 1. As a case manager, he provides drug and alcohol counseling, assists veterans in obtaining VA benefits, makes in-home visits in at-risk neighborhoods, and transports veterans for their clinical appointments. *Id.*

According to McCray, he sustained physical injuries to both of his knees during his time in the military. ECF No. 49 at 4. He also claims to suffer from post-traumatic stress disorder and other diagnosed mental conditions. *Id.* At the same time, he insists he does not need reasonable accommodations to do his job. ECF No. 60-2 at 2; ECF No. 61-1 at 17; ECF No. 71-2 at 1; ECF No. 77 at 4.

The VA provides McCray with a vehicle for his job. ECF No. 71-2 at 2. In 2007, McCray was assigned a Chevy Uplander. *Id.* Five years later, in or around July 2012, he became dissatisfied with the Chevy and asked his supervisor for a different vehicle. *Id.* at 3. According to McCray, he made the request because driving the Chevy was exacerbating his previously injured left knee. ECF No. 77 at 5–6.

In response, McCray's superiors referred him to the VA's Ergonomics Department. *Id.* at 6. On or about October 16, 2012, Ergonomics Specialist Christina Orr evaluated the Chevy. ECF

---

[1] Defendant Denis McDonough, the United States Secretary of Veterans Affairs, is the designated representative of the agency. *See* ECF No. 49 at 3.

No. 49 at 6. According to McCray, Orr concluded that the Chevy's lack of leg room was causing McCray's knee pain. ECF No. 77 at 17. Orr's assessment did not prompt any progress on McCray's request for a different vehicle. ECF No. 49 at 6.

The next month, McCray told the VA motor pool that the Chevy was exhibiting mechanical problems. ECF No. 71-2 at 3. The motor pool inspected the vehicle but did not find any problems. *Id.* Despite this, McCray maintains that the mechanical problems persisted and over time a hole developed in the floor of the vehicle. ECF No. 49 at 6; ECF No. 67-4 at 1.

Later in November 2012, McCray followed up about his vehicle request with his supervisor, Dr. Erin Williams, who in turn followed up with the motor pool. ECF No. 71-2 at 3. Finally, on December 12, 2012, McCray was offered a replacement vehicle, *id.*, a 2001 Dodge Caravan with 65,500 miles. ECF No. 49 at 6–7.

McCray was not happy with the Dodge. He insists it was too small, had a cracked windshield, no back brakes, a malfunctioning steering system, inoperable windshield wipers, visible rust, and a horn that did not work. ECF No. 49 at 6–7; ECF No. 77 at 9–12. He contends he initially refused to accept the Dodge, and then only did so on the understanding that he would only have to drive it for about two weeks. ECF No. 49 at 7; ECF No. 71-2 at 3. But McCray was stuck with the Dodge for the next six months, during which time he says he kept following up with his supervisor about getting another replacement. ECF No. 49 at 7; ECF No. 77 at 12–18.

On or around June 1, 2013, McCray told Williams he was going to file an Equal Employment Opportunity (EEO) complaint, in part because of the VA's failure to provide him with a vehicle that accommodated his disabilities. ECF No. 49 at 7. According to McCray, Williams attempted to dissuade him from filing an EEO complaint with promises of a promotion. ECF No. 77 at 17. Then, on June 19, 2013, McCray finally received a new Chevy Uplander as a replacement vehicle. ECF No. 71-2 at 4. This vehicle appears to have satisfied him. *Id.*

On August 6, 2013, McCray initiated an EEO complaint against Williams for the delay in his vehicle reassignment. ECF No. 60-1 at 1; ECF No. 67-5 at 5. This was not the first time McCray had filed an EEO complaint against Williams. McCray's Amended Complaint refers to at least one "earlier EEO complaint," ECF No. 49 at 7, an apparent reference to a September 2011 EEO complaint made less than a year after Williams had become McCray's supervisor. *See* ECF No. 67-5 at 7. Following the September 2011 EEO complaint, Williams was temporarily replaced as McCray's supervisor, but later resumed her supervisory role over McCray in or after February

2012. *Id.* McCray's requests for a different vehicle started about six months later. ECF No. 77 at 5–6.

During an October 11, 2013 mediation on his EEO complaints, McCray contends that a VA employee made hostile and unfair comments toward him. ECF No. 49 at 7–8. He subsequently requested a transfer to a different position within the VA, on the basis that he was finding it too difficult to work in an environment where he was subjected to discrimination and retaliation for filing complaints. ECF No. 49 at 7–8; ECF No. 77 at 9. He linked these difficulties to his ongoing PTSD and reports experiencing panic attacks at work during October 2013. ECF No. 49 at 7–8; ECF No. 77 at 9. By November 22, 2013, McCray had learned that his request to transfer to a different position had been or would be denied. ECF No. 49 at 8; ECF No. 71-2 at 5.

On the same day McCray heard that he would not receive a position transfer, he made a new request—this time, for a transfer to a different workstation within the building where he worked. ECF No. 71-2 at 5. His basis for this request was that he needed a reasonable accommodation for his PTSD and other mental conditions that were being exacerbated by his work environment. ECF No. 49 at 8; ECF No. 71-2 at 5. This request was also denied. ECF No. 71-2 at 5.

In lieu of transferring McCray to a different position and/or workstation, the VA assigned him a new supervisor and barred his previous supervisor from attending meetings with him. ECF No. 67-5 at 8. McCray was also excused from attending certain meetings for two years. ECF No. 77 at 18.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At summary judgment, the Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a properly supported summary judgment motion, the non-moving party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Evidence relied upon must be of a type that would be admissible at trial." *Peters v. Dielectric Corp.*, No. 18-CV-811, 2019 WL 5298244, at *4 (E.D. Wis. Oct. 17, 2019) (citing *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009)). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the non-moving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). At the summary judgment stage, for any specific issues where "the nonmovant [would be] the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict." *Peters*, 2019 WL 5298244, at *4 (citing *Celotex Corp.*, 477 U.S. at 324).

## ANALYSIS

I. **McCray's Assertions About His Disabilities Do Not Create a Triable Issue of Fact on His Failure-to-Accommodate Claims.**

To proceed with a failure-to-accommodate claim under the Americans with Disabilities Act, a plaintiff must come forward with evidence sufficient to establish that: (1) he is a qualified individual with a disability; (2) his employer was aware of the disability; and (3) his employer failed to reasonably accommodate the disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) (citing *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011)). While McCray's claims arise under the Rehabilitation Act rather than the ADA, the same elements apply. "The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act in determining whether an employer has discriminated against its employee, and so [courts] look to cases decided under both statutes in evaluating an employer's compliance with [its duty to provide reasonable accommodations]." *McCray*, 966 F.3d at 621 (citing 29 U.S.C.A. § 794(d)) (citations omitted).

While McCray properly alleged the elements of his failure-to-accommodate claim, his proof at summary judgment falls short. With respect to the first element, McCray asserts that he is a qualified individual with a disability under the Rehabilitation Act, but he lacks evidence to support this assertion. Moreover, in explicit contradiction of his own claim, he admits that he does

not require any sort of accommodation to do his job. His lack of proof and his admissions are each independently sufficient to defeat his failure-to-accommodate claim at summary judgment.

### A. McCray Has Not Shown He Has a Disability Under the Rehabilitation Act.

The parties agree that McCray is a "qualified individual" under the Rehabilitation Act, but they disagree about whether he is a "qualified individual *with a disability*." *See* ECF No. 62 at 6–9 (emphasis added). "To succeed on a claim under the Rehabilitation Act, a plaintiff 'must meet the threshold burden of establishing that he is "disabled" within the meaning of the statute.'" *Stein v. Ashcroft*, 284 F.3d 721, 724 (7th Cir. 2002) (quoting *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995)). Under the statute, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual" "as compared to most people in the general population." 29 U.S.C. § 705(9) (referencing 42 U.S.C. § 12102(1)); 29 C.F.R. § 1630.2(j)(1)(ii). A person with a record of such an impairment or who is regarded as someone who has such an impairment is also a person with a disability under the Rehabilitation Act. *See* 42 U.S.C. § 12102(1).

To show that he has disabilities, McCray cites his VA disability ratings, which are used by the VA to determine McCray's compensation benefits. *See, e.g.*, ECF No. 67-2 at 2 ("Mr. McCray is classified as a 100% disabled veteran with permanent and total disabilities by the same agency (VA) that denies that he is disabled."); ECF No. 67-5 at 1–2 ("I have BOTH service-connected mental disabilities - PTSD, Major Depression, and Anxiety and Adjustment Disorder - and service-connected physical disabilities – 10% disabled on big left toe from duties, 10% for each ankle, total and permanent flat fee at 50% disabled, 10% disabled in both knees due to arthritis and trauma, Osgood Schlatter's disease in my left knee, 20% lower back injury with arthritis on my spine, and 20% disabled in my right shoulder, with a torn rotator cuff and impingement."). But McCray does not build upon these ratings or explain why they would support a jury finding that he is disabled within the meaning of the Rehabilitation Act. These failures are fatal to his claim at summary judgment.

The mere fact that McCray has these disability ratings is, without further support, insufficient to show he is a "qualified individual with a disability" within the meaning of the ADA or Rehabilitation Act. The VA's percentage ratings are not a mechanism for measuring how much someone's major life activities are substantially limited by a disability within the meaning of the statutes that McCray invokes. Rather, these ratings "represent as far as can practicably be

determined the average impairment in earning capacity resulting from . . . diseases and injuries [incident to military service] and their residual conditions in civil occupations." 38 C.F.R. § 4.1. Accordingly, a plaintiff cannot rely on his VA disability classification to show a disability under the ADA or Rehabilitation Act. *See, e.g.*, *Mosley v. Potter*, No. H-08-484, 2009 WL 3672830, at *4 (S.D. Tex. Nov. 2, 2009) ("The Veterans Administration ratings . . . are assessed pursuant to a standard entirely different from that imposed by the Rehabilitation Act (which incorporates the ADA standards), and are therefore insufficient to create a genuine issue of fact that Plaintiff is disabled under the Rehabilitation Act." (citations omitted)); *Burkhart v. Intuit, Inc.*, No. CV-07-675-TUC-CKJ, 2009 WL 528603, at *15 (D. Ariz. Mar. 2, 2009) ("To the extent Plaintiff relies on his 30% disability rating by the Veterans Administration as evidence that he is disabled under the ADA, that reliance is misplaced." (citations omitted)).

Even if this Court were to assume that McCray's VA percentage ratings were somehow indicative of disability under the ADA, his assertions about them remain conclusory and lack the specificity required at the summary judgment stage. McCray says he is "10% disabled in both knees due to arthritis and trauma," and that he has "Osgood Schlatter's disease in [his] left knee." ECF No. 67-5 at 1. But what does this mean? McCray does not elaborate. And what does it mean to be "a 100% disabled veteran with several permanent and total disabilities"? ECF No. 67-2 at 1. This latter assertion is especially unhelpful given that McCray simultaneously says he is particularly good at his job and needs no accommodation to do it. *See, e.g.*, ECF No. 61-1 at 17. To prevail at summary judgment, McCray needed to show that there is a triable issue of fact as to whether his major life activities are limited in a substantial way in comparison with the general population, but he has come forward with insufficient evidence to allow a reasonable jury to draw this conclusion. At most, evidence of McCray's VA ratings would leave a jury to engage in improper guesswork and speculation.

McCray goes on to say that his "physical disabilities limit [his] ability to bend, stoop, climb, reach, twist, carry, sleep, walk, and concentrate, and [his] mental disabilities limit [his] concentration as well." ECF No. 67-5 at 2. Again, summary judgment demands more than this kind of conclusory statement. "Vague assertions of difficulty performing a major life activity do not create a genuine issue of material fact, particularly when unaccompanied by any evidence that the limitation is substantial compared to that of other adults." *Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 522–23 (7th Cir. 2009) (citing *Burks v. Wis. DOT*, 464 F.3d 744, 756–57 (7th

Cir. 2006)). In *Fredricksen*, the Seventh Circuit held that the plaintiff did not create a material dispute about his disability under the ADA because, even though it was clear from his testimony that his leukemia-related fatigue impaired his ability to walk to some degree, he did not establish that his difficulties rose "to the level of substantial limitation." 581 F.3d at 522 ("Although Fredricksen may occasionally get winded when walking up stairs or grow tired while grocery shopping, he did not demonstrate that his ability to walk diverged significantly from that of the general population."). Fredricksen also contended his leukemia, compounded with chronic sinusitis, substantially limited his ability to breathe. *Id.* He testified that "because of his enlarged spleen . . . he could not 'get a full breath' and 'under certain conditions' was unable 'to sustain any exertion in the way that an average person would be able to.'" *Id.* The Seventh Circuit rejected this too, citing an "absence of any evidence showing that [Fredricksen's] difficulty breathing was substantial." *Id.* at 523 (citations omitted).

The Western District of Wisconsin ruled similarly in *Bluestein v. Central Wisconsin Anesthesiology, S.C.*, 986 F. Supp. 2d 937 (W.D. Wis. 2013), *aff'd*, 769 F.3d 944 (7th Cir. 2014). The plaintiff in that case cited several ailments—including ischiogluteal bursitis, proximal hamstring tendonopathy, and sciatica—that she claimed affected her ability to move, stand, sit, walk, sleep, lift objects, and take care of herself. 986 F. Supp. 2d at 946. But the court held, "Plaintiff has not proposed any facts at all about her condition and she speaks only in the broadest terms of how the condition limits any of her major life activities. It may be true that her conditions affect some of her activities of daily living, but she has failed to show not only how they affect her but whether the effect is 'substantial,' rather than slight or moderate." 986 F. Supp. 2d at 946; *cf. E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 644 (7th Cir. 2010) ("Here, in contrast to the circumstances in *Fredricksen* . . . , [the allegedly disabled party and his spouse] each testified about specific activities and instances that caused [him] pain, the cumulative effect of which demonstrates what could easily be considered a 'substantial' limitation."). Like the plaintiff's claims in *Bluestein*, McCray's assertions about his impairments are vague and unsupported. He does not demonstrate that his difficulties with his knee injuries or his mental disorders diverge significantly from those of the general population, or that they are substantial rather than slight or moderate.

McCray's supposed trump card in this analysis is the Seventh Circuit's remand of his case. ECF No. 67-1 at 7. In that decision the Court stated, "Like the district court, we have no difficulty

assuming that McCray was a qualified individual with a disability and as such was entitled to a reasonable accommodation for that disability." 966 F.3d at 621. But that assumption was appropriate because the case was at the pleading stage. When deciding a Rule 12(b)(6) motion to dismiss, courts must assume the truth of the allegations in the complaint. Those same assumptions cannot be made at the summary judgment stage, where a plaintiff is put to his or her proof. *Siegel*, 612 F.3d at 937.

### B. McCray Has Not Shown He Was Denied a Reasonable Accommodation.

Even if McCray had come forward with evidence sufficient to create a triable issue on the first two elements, his failure-to-accommodate claim would still collapse because he has not shown he was denied a reasonable accommodation. While McCray raises triable issues regarding the VA's delay in replacing his vehicle and whether the VA was actively engaging with McCray to timely resolve the problems he reported having, *see* ECF No. 67-1 at 8–10, he dooms his claim by admitting *he does not actually need an accommodation*. He makes this damning admission repeatedly: in an administrative affidavit, ECF No. 60-2 at 2, at his deposition, ECF No. 61-1 at 17, in his response to Defendant's Statement of Facts, ECF No. 71-2 at 1, and in his own Statement of Facts, ECF No. 77 at 4.

In the face of these repeated concessions, McCray nevertheless asks for accommodations anyway. This misunderstands the law. The Rehabilitation Act does not extend a remedy for the denial of accommodations that are not reasonably necessary to allow the plaintiff to perform his job. Rather, the statute empowers disabled individuals to bring suit when they are denied accommodations reasonably necessary for their disabilities. *See* 29 C.F.R. 1630.2(o)(1)(ii) (defining "reasonable accommodation" as "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position"); *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015) ("A plaintiff cannot state a failure to accommodate claim if 'she was able to perform all essential functions of her job without regard to her physical or mental limitations.'" (citing *Brumfield*, 735 F.3d at 632)). McCray treats the law as a tool for securing any accommodation he wants, even ones he acknowledges are not required for him to do his job, as long as they pass the test of being "reasonable." That is simply not the law.

For any and all of these reasons, McCray's failure-to-accommodate claims—about the vehicle, the position, and the workstation—cannot survive Defendant's motion for summary

judgment. The Court does not reach other issues raised by Defendant, such as whether McCray's claim regarding his request for a different vehicle was time-barred due to his failure to exhaust his administrative remedies, *see* ECF No. 62 at 5–6, or whether McCray's request for a different position fails because he never showed a different position was available. *See id.* at 10–11.

## II. McCray's Retaliation Claims Fail for Lack of Proof of Any Adverse Employment Action or Causality.

McCray also brings two claims for retaliation, alleging that the VA failed to transfer him both to a new position and to a new workstation in retaliation for his having filed EEO complaints against his supervisor. To support his claims, McCray "must provide evidence that: (1) [he] engaged in protected conduct; (2) . . . [he] was subjected to an adverse employment action; and (3) . . . the protected conduct caused the adverse employment action." *Kurowski v. Shinseki*, 557 F. App'x 549, 553 (7th Cir. 2014) (citing *Povey v. City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012)); *see* ECF No. 67-1 at 10–11.

McCray's retaliation claims are scant on detail. In the Amended Complaint, only one line hints at them: "Upon information and belief, Defendant would have accommodated Plaintiff were it not for Plaintiff's earlier oppositional, protected complaints." ECF No. 49 at 17; *see also id.* at 14. In the Statement of Facts he filed in opposition to summary judgment, he offers another clue: "I complained about my supervisor . . . multiple times and beginning in January of 2011 and [sic] I believe she is the reason for the failures to accommodate my disabilities." ECF No. 77 at 15 ¶ 37. McCray's Summary Judgment Declaration contains the best articulation of the claims: "In January of 2011, Dr. Williams became my supervisor. I filed an EEO Complaint against her in September of that year. For 6 months, supervision was then switched from her to [someone else]. Then, after the case was resolved in February of 2012, she became the supervisor again. This is a large part of why I believe Dr. Williams refused to accommodate me less than six months later." ECF No. 67-5 at 7. *See also* ECF No. 67-1 at 10–11.

Piecing it together, McCray's narrative of events is that he filed an EEO complaint against his supervisor in September 2011, she was temporarily removed from her supervisory role, and then, six months after her reinstatement, she began a series of retaliatory actions against McCray, starting with her delays in accommodating his vehicle requests. After McCray initiated another EEO complaint against her in August 2013, she retaliated again, this time denying his requests for

position and workstation transfers later that year in November.[2] There are two problems with this story. First, McCray does not show that he suffered an actual "adverse employment action" within the meaning of retaliation law; not all denials of transfer requests fall within the meaning of this term. Second, and in any event, he has also failed to come forward with evidence that his engagement in protected activity caused the denial of his transfer requests.

As to the first problem, the law is clear that an "adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Sanford v. Thor Indus., Inc.*, 286 F. Supp. 3d 938, 948–49 (N.D. Ind. 2018) (quoting *Chaudhry v. Nucor Steel–Indiana*, 546 F.3d 832, 838 (7th Cir. 2008)) (citations omitted). McCray says that the denials of his transfer requests were significant changes in his employment status. As a matter of established law, they were not. McCray requested transfers to a new position and to a new workstation but admits he did not need them as accommodations for his disabilities. And, the Seventh Circuit has long held that denials of lateral transfers do not constitute cognizable adverse employment actions. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004) (citations omitted).

As to the second problem with his retaliation claims, even if McCray had evidence that he suffered an adverse employment action, he offers only speculation on causation. In fact, McCray admits in his declaration, "I do not know Dr. Williams' role with respect to my request for reassignment or change in office." ECF No. 67-5 at 9. Similarly, in response to Defendant's statement that "Williams was not involved in the decision to not reassign McCray or move his office," ECF No. 71-2 at 5, McCray states that he "is not aware of Dr. Williams' role in [the] denial of reassignment or change in office." ECF No. 71-2 at 5. A jury would thus be left to guess in connecting the dots between two EEO complaints against Williams and the decisions to deny McCray's transfer requests. The record contains no evidence indicating Williams played any part in these decisions. McCray's speculative assertions are not enough at the summary judgment stage. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) ("[S]peculation is not sufficient to survive summary judgment[.]" (citations omitted)).

---

[2] McCray alleges retaliation only in connection with his rejected attempts to transfer positions and workstations. ECF No. 49 at 13–14, 16–17. He has not pleaded a retaliation claim based on the delayed vehicle accommodation. It is therefore perplexing that his best articulation of his retaliation claim, ECF No. 67-5 at 7, focuses on the delayed vehicle accommodation.

### III. McCray's Hostile-Work-Environment Claims Fail Because He Does Not Show He Suffered Harassment on the Basis of His Being Disabled.

McCray's last two claims are for hostile work environment. "To survive summary judgment, plaintiffs [bringing hostile-work-environment claims under the Rehabilitation Act] must present evidence that: '(1) they were subject to unwelcome harassment; (2) the harassment was based on their [disability]; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability.'" *Ford v. Marion Cty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019) (citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018)).

McCray focuses on only three of these four elements, arguing that Defendant's alleged refusals to reasonably accommodate McCray's disabilities created "a hostile work environment that . . . caused [him] physical pain and mental anguish." ECF No. 67-5 at 9; *see also* ECF No. 49 at 14–15, 17–18; ECF No. 67-1 at 10. But, as explained above, McCray has admitted he could do his job without these accommodations and thus the VA's denials of McCray's requests were not failures to accommodate his disabilities. They were denials of things he wanted but did not need. They are not sufficient to support a hostile-work-environment claim.

Even if the Court were to assume that such discretionary denials could amount to severe and pervasive harassment under the Rehabilitation Act, McCray would still fall short in supporting his claim because he offers no argument or evidence on the second element—he does not show that the alleged harassment he faced was based on his disability. McCray offers no proof that Defendant's alleged refusals to reasonably accommodate his disabilities were based on his disabilities. Nor does he provide any evidence that he otherwise faced harassment that was based on his having a disability. The only possible exception to this is McCray's 2013 EEO complaint, filed with the Court by the Defendant. ECF No. 60-1. In that document McCray includes "harassment" as one of his claims, and lists the following as the basis for his claims: "discrimination, race, gender, disability." *Id.* The document does not clearly state that McCray was suffering harassment on the basis of his disabilities. Even if it did, this meager evidence sifted out of a filing provided by the opposing party does not carry the burden for McCray, who otherwise completely forgets to address, let alone support, this necessary element of his claim.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 57, is **GRANTED as to all counts**, and the Amended Complaint, ECF No. 49, is dismissed. The Clerk of Court is directed to enter judgment for Defendant.

Dated at Milwaukee, Wisconsin on April 22, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge